IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No. 3:01-CR-0356-R |
| | ) | No. 3:04-CV-0215-R |
| JAMES E. HURLEY, ID # 27854-177, | ) | |
| Defendant/movant. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

**A. Nature of the Case:** This is a Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to the provisions of 28 U.S.C. § 2255.

**B. Parties**: Movant is a federal prisoner currently residing in a United States Federal Prison Camp. The respondent is the United States of America (government).

**C. Factual and Procedural History:** In a superseding indictment dated March 27, 2002, the government charged movant with forty-three counts of fraud, forgery, and making false statements. (*See* Superseding Indictment.) On July 11, 2002, movant entered into a plea agreement whereby he agreed to plea guilty to the alleged mail fraud in violation of 18 U.S.C. § 1341 in Count 14 of the indictment, and the government agreed to dismiss the other charges against movant. (*See* Plea Agreement at 1, 3.) As part of the plea agreement, movant waived his right to appeal directly pursuant to 18 U.S.C. § 3742 or collaterally pursuant to 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel and claims that the imposed sentence constitutes an upward

departure from the applicable guidelines as determined by the Court.[1]  (*Id.* at 2-3.)  On July 11, 2002, the Court held a rearraignment hearing during which movant formally pled guilty to Count 14.  (*See* Tr. of Rearraignment Hearing attached to App. to Resp. at 36-58.)[2]

The Court held a sentencing hearing on February 21, 2003.  (*See* Tr. of Sentencing Hearing attached to App. to Resp. at 60-131.)  On that same date, it entered judgment upon the guilty plea, and sentenced movant to thirty-seven months imprisonment.  (*See* Judgment.)  Movant timely appealed, and the Fifth Circuit dismissed the appeal on December 10, 2003, because movant had waived his right to appeal the claims raised therein.  *See United States v. Hurley*, No. 03-10256, slip op. (5th Cir. Dec. 10, 2003); (Resp. at 2).

On February 3, 2004, the Court received the instant motion to vacate under 28 U.S.C. § 2255.  (Mot. Vacate at 1.)  Movant alleges that his trial attorney rendered ineffective assistance in two respects:  (1) failing to explain the "waiver of appeal provision" of the plea agreement and (2) failing to object to the loss amount utilized by the Court to calculate his sentence.  (*Id.* at 7.)  He contends that, had his attorney explained the waiver provision, he would not have pled guilty.  (*Id.* at 3.)  He asserts that such failure denied him is right to appellate review of his sentence.  (Mot. Vacate at 7.)  He also alleges that the Court did not adequately admonish him regarding the waiver provision.  (Mem. Supp. at 2-3.)

---

[1]  The waiver provision states in full:
> Except for a claim of ineffective assistance of counsel, Defendant hereby waives his right to appeal, directly pursuant to 18 U.S.C. § 3742, and post-conviction, pursuant to 28 U.S.C. § 2255, his conviction and the sentence imposed in this case so long as the Court accepts this Agreement.  The defendant does reserve the right to appeal any sentence imposed by the Court that constitutes an upward departure from the applicable guidelines [sic] as determined by the Court.

[2]  To avoid confusion, all citations to transcripts attached to the government's appendix will cite to the page of the appendix.

In an affidavit submitted with the motion, movant avers that his attorney never informed him that "the written plea agreement contained a waiver of appeal provision, and that said . . . provision included a waiver of appeal as to any sentence and the manner in which that sentence was to be determined." (Aff. of Hurley ¶ 3.)  He further avers that he "believed that [his] agreement to plead guilty would result in [the] waiver of any rights to appeal any non-jurisdictional defects."  (*Id.* ¶ 4.) He also avers:  "At no time prior to or during [the Rearraignment Hearing] did my attorney advise me that I was waiving my right to appeal my sentence and the manner in which my sentence would be determined."  (*Id.* ¶ 5.)

On April 9, 2004, the government filed its response to the motion to vacate.  (*See* Resp. at 1.)  It also filed an Appendix that contains a sealed copy of the Presentence Report (PSR) created to assist the Court in sentencing movant (pages 1 through 31); a copy of the Plea Agreement entered in this case (pages 32-35); a Transcript of the Rearraignment Hearing held July 11, 2002, (pages 36-59); a Transcript of the Sentencing Hearing held February 21, 2003, (pages 60-133); and an affidavit from movant's trial attorney (pages 134-35), with attached exhibits (pages 136-44).[3]  The government contends that the alleged failure to explain the waiver provision does not render movant's plea involuntary or unknowing.  (Resp. at 3-4.)  It further contends that movant's attorney had no basis to object to the loss amount used in the calculation of his sentence.  (*Id.* at 5-6.)

On April 20, 2004, movant filed a traverse.  (*See* Def.'s Resp. to Gov.'s Resp., hereinafter Traverse.)  On January 24, 2005, movant filed a supplemental memorandum in support of his motion

---

[3] Although the government has submitted the affidavit of movant's counsel in support of its response, the Court has not considered the affidavit in determining the instant motion to vacate.  Because any contested information within submitted affidavits is not necessary to the resolution of a motion to vacate, the Court need not conduct an evidentiary hearing so that it can properly judge the credibility of the affiants.

to vacate.[4]  (*See* Supp. Mem.)  In April 2005, he filed three additional supplemental memorandums

in support.  (*See* Second Supp. Mem.; Third Supp. Mem.; Fourth Supp. Mem.)  In May 2005, he

filed a motion for summary judgment wherein he essentially seeks the same relief as that sought in

the underlying motion to vacate.[5]  (*See* Mot. Summ. J.)  He recently filed a fifth supplemental

memorandum in support.  (*See* Fifth Supp. Mem.)

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for

a narrow range of injuries that could not have been raised on direct appeal and would, if condoned,

result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996)

(citations and internal quotation marks omitted).  It is well established that "a collateral challenge

may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*)

(quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).  Defendants who collaterally attack their

federal convictions, furthermore, may not raise grounds previously raised on direct appeal. *United*

*States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997).

In addition, defendants may only collaterally attack their convictions on grounds of error

omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice"

resulting from the asserted error. *Shaid*, 937 F.2d at 232.  Even then, any new assertion of error is

limited to "issues of constitutional or jurisdictional magnitude." *Id.*  The cause and prejudice test

---

[4]  Also, on March 11, 2005, movant filed a "Motion for Court to Direct Magistrate to Take up Motion under 28 U.S.C. § 2255."  In view of the instant findings and recommendation, the Court should deem that motion moot.

[5]  The Rules Governing Section 2255 Proceedings for the United States District Courts (2255 Rules) do not contemplate such a motion.  Although Rule 12 of those rules permits the Court to apply the Federal Rules of Civil Procedure when appropriate, motions for summary judgment under Fed. R. Civ. P. 56 are not appropriate or necessary in the habeas context.  This is especially so where, as here, the motion essentially seeks the same relief as that sought in the underlying motion to vacate.  For these reasons, the Court should summarily deny the motion as improvidently filed in this action.

applies even to allegations of fundamental constitutional error. *Id.* The only exception to the application of the test is when a movant can establish a fundamental miscarriage of justice, *i.e.* that he or she is actually innocent of the crime convicted. *Id.* Furthermore, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). In addition, a showing of ineffective assistance of counsel satisfies the cause and prejudice standard. *See United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).

Movant does not allege that he is actually innocent of the crime for which he has been convicted. He instead attempts to show cause and prejudice resulting from ineffective assistance of counsel. Within his first claim of ineffective assistance, he also challenges the validity of his guilty plea.

## III.  VOLUNTARINESS OF GUILTY PLEA

Movant wants the Court to deem his guilty plea involuntary because his attorney allegedly failed to explain the waiver-of-appeal provision of the plea agreement and the Court did not adequately inform him that he was waiving the right to appeal his sentence during his rearraignment.

A plea of guilty waives a number of constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). Thus, the Fourteenth Amendment Due Process Clause imposes certain requirements to ensure the validity of a guilty plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978) (citing *Brady v. United States*, 397 U.S. 742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)). "*Boykin* requires that defendants have

5

a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record." *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer*, 584 F.2d at 693 (quoting *Brady*, 397 U.S. at 749).

> When examining the totality of the circumstances, a reviewing court should "consider the complexity of the charge, the defendant's level of intelligence, age and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government."

*United States v. Cross*, 57 F.3d 588, 591 (7th Cir. 1995) (citations omitted).

Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "Before the trial court may accept a guilty plea, the court must ensure that the defendant 'has a full understanding of what the plea connotes and of its consequence.'" *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991) (quoting *Boykin*, 395 U.S. at 244). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *James v.*

6

*Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)). In determining whether a plea is voluntary and intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor*, 933 F.2d at 329.

A prisoner may not generally "collaterally attack a voluntary and intelligent" plea. *Id.* at 327. "A federal court will uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary and intelligent." *James*, 56 F.3d at 666. A guilty plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *See Brady*, 397 U.S. at 755. "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981). "When considering challenges to guilty plea proceedings, [the courts] have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). The consequences of a guilty plea means only that the defendant knows the direct consequences of his plea, *i.e.*, "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002).

With these principles in mind, the Court proceeds to examine the voluntariness of movant's plea.

7

## A.  **Ineffective Assistance of Counsel**

Movant claims that he involuntarily pled guilty because his attorney failed to explain the waiver provision of the plea agreement.  He argues that he did not understand that he was waiving his right to appeal his sentence.

A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-771 (1970)).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The *Strickland* test applies when a prisoner alleges he was denied effective assistance of counsel in the context of a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).  "[I]n a guilty plea scenario, a [prisoner] must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error."  *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).  To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58.  To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.

For purposes of these findings, the Court will assume that defense counsel indeed failed to explain the waiver provision.  Such assumption, however, does not demonstrate ineffective assistance of counsel.  In this instance, movant has not shown a reasonable probability that, but for the lack of explanation, he would have insisted on going to trial on a plea of not guilty.  In fact, by pleading guilty to Count 14, movant avoided trial on forty-three separate counts.  Convictions on all forty-three counts would have subjected movant to 400 years imprisonment if the Court decided to run the sentences consecutively.  Movant's plea exposed him to no more than five years imprisonment.  The increased risk for substantially greater jail-time negates a finding of reasonable probability that movant would have insisted on going to trial had his attorney fully explained the waiver-of-appeal provision.

Movant relies heavily upon *United States v. Gipson*, 985 F.2d 212 (5th Cir. 1993) for the proposition that "[i]n the context of the loss of appellate rights, prejudice occurs where a defendant relies upon his attorney's unprofessional errors, resulting in the denial of his right to appeal." (Mem. Supp. at 2.)  Movant also points out that *Gipson* further held that "if a petitioner can prove that the ineffective assistance of counsel denied him the right to appeal, then he need not further establish – as

a prerequisite to habeas relief – that he had some chance of success on appeal." (*Id.* at 2 (citing *Gipson*, 985 F.2d at 215)).)

In this instance, movant did not lose his right to appeal based upon any unprofessional error of counsel. As discussed more fully below, the Court admonished movant about the waiver of his appellate rights and he persisted in pleading guilty and waiving his right to appeal, except in limited circumstances. There is a significant difference between losing the right to appeal and waiving such right. As shown by the plea agreement, movant retained a limited right to appeal. Movant, furthermore, pursued an appeal that was dismissed because he raised claims that fell outside the limited right to appeal that he had retained.

The alleged failure of counsel to fully explain the waiver-of-appeal provision did not affect the knowing and voluntary nature of the waiver. Movant has not shown a reasonable probability that, but for the lack of explanation, he would have insisted on going to trial on a plea of not guilty, or that he lost his right to appeal as a result of the alleged failure.

**B.  Trial Court Admonition**

Movant asserts that the Court did not specifically mention his right to appeal his sentence when it conducted its inquiry concerning his appellate rights during his rearraignment. He has submitted an affidavit in which he avers that when the Court asked him about his understanding of his right to appeal, he believed the Court was referring to the waiver of any non-jurisdictional defect that may have occurred. (*See* Aff. of Hurley ¶ 6.)

*1.  Fed. R. Crim. P. 11*

"Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the

facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). Although Rule 11 has undergone various changes over the years, it continues to provide procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. Fed. R. Civ. P. 11 (showing various amendments including amendments in 1999 and 2002); *United States v. Ruiz*, 536 U.S. 622, 631 (2002) (referring to Rule 11 as the "guilty-plea safeguards"); *Vonn*, 535 U.S. at 62 (recognizing the evolution of the rule over the past three decades). As it existed when movant pled guilty in July 2002, Rule 11 required the courts to "inform the defendant of, and determine that the defendant underst[ood] . . . the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence." *See* Fed. R. Crim. P. 11(c)(6) (now re-worded and set forth in Fed. R. Crim. P. 11(b)(1)(N)).

Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *United States v. Gracia*, 983 F.2d 625, 627 (5th Cir. 1993). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Vonn*, 535 U.S. at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea, including the waiver of his right to appeal, does not require the Court to determine that the defendant has a perfect understanding of the consequences. In fact, the Supreme Court "has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Ruiz*, 536 U.S. at 623. The Court must only ascertain

11

whether the defendant has a realistic or reasonable understanding of his plea. *See Gracia*, 983 F.2d at 627-28 (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea").

> The manner in which the charge is explained and the method for determining the defendant's understanding necessarily vary from case to case depending upon the capacity of the defendant and the attendant circumstances. In making that deter-mination, the court should not exalt form over substance but should look to the reality of the situation as opposed to the ritual.

*United States v. Allard*, 926 F.2d 1237, 1245 (1st Cir. 1991).

There are no "magic words" or phrases or "talismanic test[s]" to show compliance with the admonishments required under Fed. R. Crim. P. 11. *See United States v. Medina-Silverio*, 30 F.3d 1, 3 (1st Cir. 1994); *accord* Fed. R. Crim. P. 11 advisory committee note 1983 amend. "Although district courts are encouraged to track the language of Rule 11," deviations from the language of the rule does not mandate a conclusion that the defendant was uninformed of his or her rights or that the plea was involuntarily or unknowingly entered. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994). The Supreme Court has long held that guilty pleas are not to be overturned on collateral review for mere non-compliance with Rule 11. *See United States v. Timmreck*, 441 U.S. 780, 783-85 (1979). Even a "failure to advise the defendant of his right to appeal does not entitle" the defendant to collateral relief, unless he has suffered "prejudice from the omission."[6] *See Peguero v. United States*, 526 U.S. 23, 24 (1999) (addressing issue in context of Fed. R. Crim. P. 32). To obtain collateral

---

[6] Furthermore, Congress added a harmless-error subparagraph (subparagraph (h)) in 1983 to "deal[] with a slip-up by the judge in applying the Rule itself." *Vonn*, 535 U.S. at 62. The inclusion of a harmless-error subparagraph has "had no effect on the stringent standard for collateral review of Rule 11 error under 28 U.S.C. § 2255" established in *Timmreck*. *Vonn*, 535 U.S. at 63. When movant pled guilty in July 2002, subparagraph (h) read: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." After amendments effective December 1, 2002, it reads: "A variance from the requirements of this rule is harmless error if it does not affect substantial rights."

review on a challenge to admonitions given under Rule 11, those who plead guilty must show "that the Rule 11 proceeding was 'inconsistent with the rudimentary demands of fair procedure' or constituted a 'complete miscarriage of justice.'" *Vonn,* 533 U.S. at 64 (quoting *Timmreck,* 441 U.S. at 783, which in turn quoted *Hill v. United States,* 368 U.S. 424, 428 (1962)).   There must be some "aggravating circumstances" before non-compliance with the mandates of Rule 11 entitle a prisoner to collateral relief under § 2255.   *See Timmreck,* 441 U.S. at 784-85.

In addition, prisoners who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court.   *See Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977).   Prisoners must also overcome the presumption of regularity and "great weight" accorded court records.   *See United States v. Abreo,* 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn,* 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

### 2. *Rearraignment Hearing*

On July 11, 2002, movant appeared before the Court for rearraignment.   (Tr. of Rearraignment Hearing at 36.)   The Court summarized movant's Constitutional rights.   (*Id.* at 36-39.)   It informed movant that he had a right to trial and that, if he was found guilty he "would have the right to appeal [his] conviction."   (*Id.* at 39.)   Movant stated that he understood each of his Constitutional rights.   (*Id.*)

13

The Court further informed movant that, if he pled guilty and the Court accepted such plea, he "would be waiving [his] right to a trial" and the "other rights associated with the trial." (*Id.*) It also explained that "[y]ou have the right to appeal the sentence the Court imposes, unless you waive that right." (*Id.* at 41.) Movant stated that he understood that explanation. (*Id.* at 42.) He further indicated that he was a well-educated man with "[a]lmost three years of law school." (*Id.*)

Movant indicated that he was competent to plead guilty and his attorney had no reason to believe movant was "not fully competent to enter a plea of guilty." (*Id.* at 42-43.) The attorney believed movant's proposed plea was knowing and voluntary. (*Id.*)

Movant stated that he had received a copy of the superseding indictment and that he understood the charges against him. (*Id.* at 44.) At the Court's request, the government summarized Count 14 of the superseding indictment as follows: "The Defendant is charged in Count 14 of the indictment of the offense of mail fraud. Title 18, U.S. Code, Section 1341 makes it a crime for anyone to use interstate mails in the carrying out of a scheme and artifice to defraud." (*Id.* at 44-45.) The government identified the essential elements of Count 14 as (1) movant knowingly created a scheme to defraud; (2) movant acted with specific intent to commit fraud; (3) movant caused another person to mail something through the United States Postal Service for the purpose of carrying out the scheme; and (4) the scheme to defraud employed false and material misrepresentations, pretenses, or promises. (*Id.* at 45.) Movant stated that he understood the essential elements and admitted to committing each element. (*Id.* at 45-46.)

Movant stated that he signed the plea agreement after reading it. (*Id.* at 46-47.) He further stated that he voluntarily and of his own free will entered into the plea agreement. (*Id.* at 47.) He

stated that no one had forced him to plead guilty.  (*Id.*)  He stated that he was not pleading guilty due to any promises made to him other than those contained in the written plea agreement.  (*Id.*)

The Court informed movant that, by the terms of the plea agreement, he "waived [his] right to appeal."  (*Id.* at 49.)  Movant stated that he understood that he had the right to appeal, and that it was his "understanding" that he had "reserved the right to appeal on ineffective assistance of counsel claims."  (*Id.*)  Nevertheless, he affirmatively stated that he "wish[ed] to waive [his] right to appeal."[7]  (*Id.*)

The Court informed movant that the maximum penalty for the offense to which movant intended to plead guilty was five years imprisonment; a fine not to exceed $250,000 or twice his gain or twice the loss to any victim, and a term of supervised release not to exceed three years.  (*Id.* at 48, 50.)  Movant stated that he understood his maximum sentence.  (*Id.* at 51.)  He further stated that he understood the potential consequences of his plea.  (*Id.*)  With such understanding he persisted with his guilty plea.  (*Id.*)

The Court found movant competent and capable of entering an informed plea.  (*Id.* at 55.)  It found that movant made a knowing and voluntary plea.  (*Id.*)  It found that independent facts establishing all elements of the charged offense supported the plea.  (*Id.*)  Lastly, the Court ordered the preparation of a Presentence Report (PSR) to aid the Court in sentencing.  (*Id.* at 56.)

---

[7] Movant's contention that "he was not aware" of the waiver-of-appeal provision, which is "the singular reason" that he "raised no question" regarding that provision, (*see* Third Supp. Mem. at 2), is flatly contradicted by the transcript of his rearraignment, (*see* Tr. of Rearraignment at 49).

3. *Alleged Deficiencies*

Movant strenuously argues that the Court was required to specifically inform him of his right to appeal his sentence rather than generically informing him of his right to appeal. (*See* Third Supp. Mem. at 2.)  However, there is no requirement that the Court use the specific wording of the rule. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).  As long as the Court informs the defendant of his rights and determines that he understands the consequences of his plea, the failure to use the words of the rule provide no basis for relief.  The Court did not err merely because it did not mention movant's right to appeal his sentence when it discussed the waiver of movant's right to appeal generically.  Such omission in and of itself does not render the waiver or plea involuntary.

Movant further asserts that when the Court discussed the waiver of his appellate rights, he believed that he was merely waiving any non-jurisdictional defect that may have occurred.  (*See* Aff. of Hurley ¶ 6.)  Such belief was not based upon information from his attorney or the Court, but instead was based upon movant's "limited experience with criminal plea proceedings" and his understanding of waiver that he later determined was consistent with the concurring opinion in *United States v. Melancon*, 972 F.2d 566 (5th Cir. 1992).  (*See* Traverse at 2.)  Regardless of its basis or consistency with that concurring opinion, movant's erroneous belief regarding the scope of waiver has no basis in the law.

The majority opinion in *Melancon* held that an informed and voluntary waiver of the right to appeal is enforceable and deprives the defendant of his right to appeal his conviction or sentence. 972 F.2d at 567-68.  As recognized by movant, the concurring opinion[8] recognized and accepted the

---

[8] District Judge Parker, sitting by designation, concurred specially because he could not dissent due to binding precedent that supported the majority opinion.  972 F.2d at 570 (Parker, J., concurring).  He wrote separately to express why the relied-upon precedent "is illogical and mischievous – and to urge the full Court to examine [such precedent] and to reject

16

long-standing principle that "an unconditional guilty plea – made knowingly, voluntarily, and with the benefit of competent counsel – functionally waives all nonjurisdictional defects that have occurred during pre-plea proceedings against the defendant." *Id.* at 573 (Parker, J., concurring). The concurring opinion, however, specifically rejected the notion that a defendant could waive the right to appeal a sentence that had not yet been imposed. *Id.* at 571-580. Regardless of such rejection, the majority opinion of *Melancon* remains the law of this circuit. *See United States v. McKinney*, 406 F.3d 744, 746 & n.2 (5th Cir. 2005) (relying on *Melancon* and other cases for holding that "[a] defendant may waive his statutory right to appeal if the waiver is knowing and voluntary"); *United States v. Baymon*, 312 F.3d 725, 729 (5th Cir. 2002) (same). Although Judge Parker urged *en banc* reconsideration of the *Melancon* majority opinion, the Fifth Circuit denied a request for rehearing. *See United States v. Melancon*, 977 F.2d 576 (5th Cir. 1992) (Table, No. 91-4627). There is thus no support under Fifth Circuit law for movant's belief that he was not waiving his right to appeal his sentence.

Despite his stated erroneous belief that he was merely waiving any non-jurisdictional defect that may have occurred, movant has provided no rational basis for such belief. Reliance upon the concurring opinion in *Melancon* rather than the majority opinion does not suffice. By his own admission, neither the Court nor counsel gave erroneous information that led to such belief. Although movant argues that he did not understand the waiver-of-appeal provision of his plea agreement, the transcript of the Rearraignment Hearing clearly shows that movant read the plea agreement, knew that it contained a waiver-of-appeal provision, and understood that the provision

---

it." *Id.* He thus "concurred" in name only – his concurring opinion is more like a dissenting opinion.

specifically reserved the right to appeal on the basis of ineffective assistance of counsel. The Court specifically informed movant that he had the right to appeal his sentence, unless he waived such right. It later specifically informed movant that, pursuant to the plea agreement, he had waived his right to appeal except as to claims of ineffective assistance of counsel. Movant specifically indicated an understanding that he was waiving his right to appeal except in limited circumstances. When the Court admonished him in accordance with Rule 11, he raised no question regarding the waiver provision. Furthermore, the waiver provision of the plea agreement explicitly and unambiguously waives movant's right to directly appeal under 18 U.S.C. § 3742.[9] That movant now claims a lack of understanding does not mean that further inquiry was necessary at the plea hearing. Unless the Court receives some "objective information at the plea colloquy that would have reasonably put it on notice that further inquiry was needed . . .the trial court had no duty to undertake a more searching inquiry at the plea colloquy." *United States v. Abreo*, 30 F.3d 29, 31 (5th Cir. 1994). Movant has identified no such objective information during his rearraignment.

In conclusion, a review of the record as a whole reflects that movant is a highly educated man who completed almost three years of law school. Movant stated in open court under oath that he understood the proceedings against him, the nature of the offense of which he was charged, and the consequences of entering his guilty plea, including that his appellate rights were limited by the plea agreement he entered into. He affirmed that his plea was not the result of coercion or duress and was not induced by threats, improper promises, deception, or misrepresentation. The record reflects that movant was informed about and understood the nature of the charge against him. He knew the

---

[9] Section 3742, titled "Review of a sentence", states in subsection (a) that "[a] defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence" improperly imposed as set forth in one of four listed subparagraphs.

maximum prison term and fine to which he could face for the charged offense.  His testimony at the

Rearraignment Hearing shows that he knew and understood that he had a right to appeal that was

waived by the plea agreement.  He stated that he understood the consequences of his plea – one of

which was the waiver of his appellate rights except to the extent specifically reserved in the plea

agreement.  He has not overcome the presumption of verity accorded solemn declarations made in

open court.  He has not overcome the presumption of regularity accorded court records.  The totality

of the circumstances show that movant voluntarily and knowingly pled guilty and waived his appel-

late rights as set forth in the plea agreement.

## IV.  INEFFECTIVE ASSISTANCE DURING SENTENCING

Movant also claims that his trial attorney rendered ineffective assistance when he failed to

object to the loss amount utilized by the Court to calculate his guideline range and sentence.  More

specifically, movant contends that paragraphs 16 and 24 of the PSR are internally inconsistent and

resulted in the Court erroneously calculating the loss amount.  He argues that the loss amount

should be calculated by subtracting the amount of his repayments ($35,750) from the amount of

stolen funds placed into his personal bank account ($83,280.69).  Such calculation would result in

a loss amount of $47,530.69.  (Mem. Supp. at 4.)  He contends that "[t]here was no testimony or

other evidence introduced at [his] sentencing hearing concerning the dollar amounts of [the checks

taken from the victim's annuity] other than the Presentence Report itself."  (*Id.* at 5.)  He further

contends that his "testimony was uncontroverted that he deposited all the funds he took into his

personal bank account."  (*Id.*)

Paragraphs 16 and 24 appear internally consistent.  Paragraph 16 indicates that movant

removed $186,133.81 from a Ms. Shoemaker's annuity and, of that amount, $83,280.69 was depos-

ited into movant's personal bank account.  (*See* PSR ¶ 16.)  Paragraph 24 indicates that movant

repaid $35,750 of the $186,133.81 for a total loss amount from movant's wrongful actions related

to Ms. Shoemaker.  (*Id.* ¶ 24.)  In addition, ¶ 28 of the PSR indicates that "Equitable Life Assurance

replaced the monies stolen from Ms. Shoemaker's annuity account and, therefore, suffered a loss in

the amount of $150,383.81."  (*Id.* ¶ 28.)

Not only does there appear to be no inconsistency between paragraphs 16 and 24, a PSR

generally "bears sufficient indicia of reliability, such that a sentencing judge may consider it as evi-

dence in making the factual determinations required by the Sentencing Guidelines", *United States*

*v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999).  While "a district court must resolve disputed issues

of fact if it intends to use those facts as a basis for sentencing, the court can adopt facts contained

in a PSR without inquiry, if those facts ha[ve] an adequate evidentiary basis and the defendant does

not present rebuttal evidence."  *Id.* (quoting *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir.

1994)).  Furthermore, "[a] defendant's rebuttal evidence must demonstrate that the information

contained in the PSR is 'materially untrue, inaccurate or unreliable,' and '[m]ere objections do not

suffice as competent rebuttal evidence.'" *Id.* (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th

Cir. 1998)).

In this instance, ¶ 28 of the PSR indicates that Equitable Life Assurance suffered a loss of

$150,383.81 after taking into account the repayments made by movant.  In addition, movant test-

ified at sentencing that the checks from Shoemaker "total 186,000."  (Tr. of Sentencing Hearing at

90.)  Although there may be a question as to whether movant deposited this full amount into his

private bank account, (*compare id.* at 91 (indicating that all such funds were so deposited) *with* PSR

at 3 (indicating that movant deposited only $83,280.69 into his personal bank account)), there

appears to be no question as to the amount taken from Ms. Shoemaker.  Both the PSR and movant appear to agree that movant took approximately $186,000 from Shoemaker and reimbursed her for $35,750.  In addition, the government provides documentation in its appendix that shows twenty-seven checks from Shoemaker made payable to movant which total $186,133.81.  (*See* App. at 142-44.)  There appears to be no factual dispute as to the amount taken from Shoemaker.  Movant provides nothing which demonstrates that the information contained in the PSR is materially untrue, inaccurate, or unreliable.

The PSR calculated the loss amount to Equitable Life Assurance as $150,383.81 based upon its replacement of that amount.  (*See* PSR ¶ 28.)  The Court properly relied upon this loss amount because it had an adequate evidentiary basis and because movant presented no rebuttal evidence against such calculation.  Consequently, defense counsel had no basis to assert an objection to the loss amount.  A mere objection, furthermore, would not constitute competent rebuttal evidence. Because movant has provided nothing to demonstrate that the information contained in the PSR is materially untrue, inaccurate, or unreliable, any objection to the calculation would have been denied.

For the foregoing reasons, the Court finds no deficiency of counsel from the failure to object to the loss calculation.  "Counsel cannot be deficient for failing to press a frivolous point."  *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995).  Nor is "counsel . . . required to make futile motions or objections."  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).  Counsel need not assert and pursue frivolous objections or challenges to render effective assistance.  *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).  This claim entitles movant to no relief.

## V.  EVIDENTIARY HEARING

Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary.  No evidentiary hearing is required, when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255. In this instance, the matters reviewed by the Court conclusively show that movant is entitled to no relief.

## VI.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255 with prejudice.  It is further recommended that the Court **DENY** movant's motion for summary judgment as improvidently filed in this § 2255 action, and **DEEM MOOT** his motion to direct the Magistrate Judge to issue a ruling in this action.

**SIGNED this 22nd day of June, 2005.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE